THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE ZILLOW GROUP, INC.
SECURITIES LITIGATION

CASE NO. C17-1387-JCC

ORDER

This matter comes before the Court on Plaintiffs' motion for class certification (Dkt. No. 74) and Defendants' motion to strike[1] (Dkt. No. 95). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and GRANTS Plaintiffs' motion for class certification (Dkt. No. 74) and DENIES Defendants' motion to strike (Dkt. No. 95) for the reasons explained herein.

I.    BACKGROUND

Plaintiffs bring this putative securities fraud class action against Zillow Group, Inc. ("Zillow"), and against Spencer Rascoff and Kathleen Phillips, Zillow's Chief Executive Officer and Chief Financial Officer/Chief Legal Officer during the proposed class period (collectively "Defendants"). (Dkt. No. 47 at 7–8.) The Court's previous orders describe Plaintiffs' claims and

_____

[1] Defendants filed a surreply arguing that the Court should strike portions of Plaintiffs' reply and a supplemental expert report. (Dkt. No. 95.)

ORDER
C17-1387-JCC
PAGE - 1

1    allegations in detail. (Dkt. Nos. 46, 54.) The thrust of their claims is that Zillow misrepresented

2    its compliance with the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601,

3    2607, and that Plaintiffs and other similarly situated investors acquired Zillow's securities at

4    inflated prices during the class period. (*See generally* Dkt. No. 47.) Plaintiffs allege that even

5    though the Consumer Financial Protection Bureau (CFPB) began investigating Zillow for

6    RESPA violations in 2015, Zillow did not disclose that fact to investors until May 4, 2017, and

7    even then, downplayed the seriousness of the situation. (*Id.* at 41–43.) According to Plaintiffs,

8    the truth came out on August 8, 2017 when Zillow disclosed that the CFPB had proposed

9    settlement discussions with Zillow and intended to charge Zillow with RESPA violations if a

10   settlement was not reached. (*Id.* at 44–45.) Zillow's share price fell over the following two

11   trading days. (*Id.*) The proposed class period begins on November 17, 2014, the day of the first

12   alleged misrepresentation, and ends on August 8, 2017, the day of the alleged final corrective

13   disclosure. (Dkt. No. 74 at 1.)

14       Plaintiffs seek to certify a class defined as: "[A]ll persons other than Defendants who

15   purchased or otherwise acquired Zillow securities between November 17, 2014 and August 8,

16   2017, both dates inclusive." (Dkt. No. 74 at 1.)[2] Plaintiffs propose excluding from the class:

17   "Defendants herein, the officers and directors of the Company, at all relevant times, members of

18   their immediate families and their legal representatives, heirs, successors or assigns and any

19   entity in which Defendants have or had a controlling interest." (*Id.* at 1 n.2.)

---

21   [2] The Court grants certification of this class definition quoted from Plaintiffs' motion for class
22   certification. Plaintiffs include additional language in the class definition in their proposed order:
     "All persons who purchased or otherwise acquired Zillow securities between November 17, 2014
     and August 8, 2017, both dates inclusive . . . , *and were damaged upon the revelation of the*
23   *alleged corrective disclosures.*" (Dkt. No. 74-1 at 3 (emphasis added); *see also* Dkt. No. 47 at
     50.) Other courts have concluded that in securities fraud class actions, the phrase "and were
24   damaged" is superfluous "and does not substantively alter the class definition's scope." *In re*
     *LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 529–30 (S.D.N.Y. 2018)
25   (collecting cases); *Gruber v. Gilbertson*, 2019 WL 4439415, slip op. at 9 n.4 (S.D.N.Y. 2019).
     The Court finds these decisions persuasive and omits the unnecessary language from the class
26   definition.

1

## II.    DISCUSSION

2

### A.    Legal Standard for Class Certification

3   A party seeking to litigate a claim as a class representative must affirmatively satisfy the

4   requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the

5   categories under Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011);

6   *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). Rule 23(a) requires a

7   showing that (1) the class is so numerous that joinder is impracticable; (2) there are common

8   questions of law or fact to the class; (3) the claims or defenses of representative parties are

9   typical of those of the class; and (4) the representatives will fairly and adequately protect the

10  interests of the absent class members. Fed. R. Civ. P. 23(a). Plaintiffs seek certification under

11  Rule 23(b)(3), which requires the Court to find that "questions of law or fact common to the

12  class members predominate over any questions affecting only individual members, and that a

13  class action is superior to other available methods for fairly and efficiently adjudicating the

14  controversy." Fed. R. Civ. P. 23(b)(3).

15  In determining whether the plaintiffs have carried this burden, the Court must conduct a

16  "rigorous analysis." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). This inquiry

17  may "entail some overlap with the merits of the plaintiff's underlying claim[,]" though the Court

18  may consider the merits only to the extent that they overlap with the requirements of Rule 23.

19  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). The ultimate decision to

20  certify a class is within the Court's discretion. *Vinole v. Countrywide Home Loans, Inc.*, 571

21  F.3d 935, 944 (9th Cir. 2009).

22  In opposing class certification, Defendants argue that 90 percent of the proposed class is

23  barred from recovering damages and that for the remaining 10 percent, individual issues of

24  reliance predominate. (*See* Dkt. No. 86 at 15–20, 23–27.) Defendants also contend that Plaintiffs

25  are atypical and inadequate class representatives and Plaintiffs have not proved a class action is

26  superior to individual lawsuits. (*Id.* at 20–23.) The Court will first address Defendants' argument

about damages and then will address each Rule 23(a) and Rule 23(b) requirement in turn.

B.      **Private Securities Litigation Reform Act Damages Limitation**

Zillow first argues that the proposed class is dramatically overbroad, and therefore uncertifiable, because 90 percent of the class is barred from recovering damages. (*See* Dkt. No. 86 at 15–20.) The Private Securities Litigation Reform Act (PSLRA) limits an investor's damages to the difference between the price an investor paid for a security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market. 15 U.S.C. § 78u-4(e)(1). Under this provision, if a plaintiff's purchase price is below the mean price during the 90-day period, then the plaintiff cannot recover damages. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 461 (9th Cir. 2000).

Defendants' expert opines that approximately 90 percent of the proposed class purchased securities before May 5, 2017, and that the mean trading price during the 90-day period beginning on August 8, 2017 (the date of the alleged final corrective disclosure) is higher than the price of Zillow's stock at any point before May 5, 2017. (*See* Dkt. No. 87-1 at 68–75.) Plaintiffs respond that (1) Defendants' analysis of which investors are barred from recovery under the PSLRA is inaccurate, (2) to the extent the Court agrees with Defendants' application of the damages limitation, any problem can be cured by defining the class, as Plaintiffs did in their proposed order, as investors who "were damaged" and, (3) regardless of the merits, it is premature for the Court to determine the correct application of the PSLRA's damages limitation at the class certification stage. (*See* Dkt. No. 92 at 6–9.)

The Court agrees with Plaintiffs that determining whether investors who purchased before May 5, 2017 are barred under PSLRA's damages limitation would be a premature inquiry into the merits of the suit. At the class certification stage, the Court may examine the merits of the underlying claim "only inasmuch as it must determine whether common questions exist" and whether the other requirements of Rule 23 are met, "not to determine whether class members

1   could actually prevail on the merits of their claims." *Ellis*, 657 F.3d at 983 n.8; *Eisen v. Carlisle*

2   *and Jacquelin*, 417 U.S. 156, 177 (1974) (finding that Rule 23 does not give a court the authority

3   to "conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be

4   maintained as a class action"); *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) ("[T]he

5   possibility that a plaintiff will be unable to prove his allegations" is not "a basis for declining to

6   certify a class which apparently satisfies . . . [Rule 23]."); *Schleicher v. Wendt*, 618 F.3d 679,

7   687 (7th Cir. 2010) ("The chance, even the certainty, that a class will lose on the merits does not

8   prevent its certification.").

9       Defendants' damages argument does not pose an obstacle to certification under Rule 23.

10  To the extent that the Court will need to decide whether the PSLRA's 90-day lookback rule

11  reduces or eliminates certain class members' damages, "it can do so with a legal determination

12  that is common to the entire class." *Rodman v. Safeway, Inc.*, 2014 WL 988992, slip op. at 17

13  (N.D. Cal. 2014), *aff'd*, 694 F. App'x 612 (9th Cir. 2017). And if the Court agrees with

14  Defendants' position, the result will not be that "individual questions overwhelm[] common

15  ones;" it will simply be that a portion of the class fails on the merits of their claim. *Amgen Inc. v.*

16  *Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 474 (2013). That the proposed class

17  representatives are not in that portion of the class does not render them atypical. *See Thorpe v.*

18  *Walter Inv. Mgmt., Corp.*, 2016 WL 4006661, slip op. at 9 (S.D. Fla. 2016) (noting that the

19  timing of the class representative's transactions does not create fundamentally divergent interests

20  with the putative class). The Court thus finds that Defendants' argument does not preclude

21  findings of commonality, typicality, predominance, or superiority. *See* Fed. R. Civ. P. 23(a),

22  23(b)(3).

23      Defendants filed a surreply asking the Court to strike portions of Plaintiffs' reply brief

24  and the supplemental declaration of Plaintiffs' expert, Dr. Nye, filed with the reply brief. (Dkt.

25  No. 95.) In the alternative, Defendants ask for leave to file supplemental briefing. (*Id.* at 2–3.)

26  Because the Court declines at this stage of the litigation to reach the merits of Defendants'

1   damages argument, the Court does not rely on the challenged portions of the reply brief or

2   supplemental expert report. Accordingly, the Court DENIES Defendants' motion to strike as

3   moot.

4          **C.**      **Rule 23(a) Requirements**

5         Rule 23(a) requires that one or more members of a class may sue as a representative

6   plaintiff only if (1) the class is so numerous that joinder is impracticable; (2) there are common

7   questions of law or fact to the class; (3) the claims or defenses of representative parties are

8   typical of those of the class; and (4) the representatives will fairly and adequately protect the

9   interests of the absent class members. Fed. R. Civ. P. 23(a). Defendants argue the Plaintiffs have

10  not satisfied the requirements of typicality and adequacy. (Dkt. No. 86 at 20–23.)

11            **1.**   **Numerosity**

12        Rule 23(a)'s first requirement is satisfied when the proposed class is sufficiently

13  numerous to make joinder of all members impracticable. Fed. R. Civ. P. 23(a)(1). The

14  numerosity requirement requires the examination of the specific facts of each case, though "in

15  general, courts find the numerosity requirement satisfied when a class includes at least 40

16  members." *Rannis v. Recchia*, 380 Fed. App'x 646, 651 (9th Cir. 2010) (unpublished); *see also*

17  *Troy v. Kehe Food Distributors, Inc.*, 276 F.R.D. 642, 652 (W.D. Wash. 2011) (certifying a class

18  of forty-three to fifty-four workers). "Where the exact size of the class is unknown, but general

19  knowledge and common sense indicate that it is large, the numerosity requirement is satisfied."

20  *In re Abbott Labs. Norvir Anti–Trust Litig.*, 2007 WL 1689899, slip op. at 6 (N.D. Cal. 2007)

21  (internal quotation omitted). Common sense assumptions support a finding of numerosity in

22  class actions brought on behalf of shareholders in publicly owned corporations. *Di Donato v.*

23  *Insys Therapeutics, Inc.*, 333 F.R.D. 427, 434–35 (D. Ariz. 2019) (citing *Zeidman v. Ray*

24  *McDermott & Co., Inc.*, 651 F.2d 1030, 1039 (5th Cir. 1981)).

25        Since Zillow's securities were heavily traded and widely available during the class

26  period, common sense indicates there are a substantial number of affected parties. (*See* Dkt. No.

75-5 at 19–22 (noting the total number of Class A and Class C shares issued and outstanding during the class period ranged from 34.4 million to 55.8 million and from 118 million to 125.1 million respectively)); *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (finding the numerosity requirement met where the defendant had more than 36 million shares of stock outstanding during the class period). The Court finds this element is satisfied.

## 2. Commonality

Under Rule 23(a)(2)'s commonality requirement, a plaintiff must demonstrate that the "class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *Mazza*, 666 F.3d at 588 (quoting *Dukes*, 564 U.S. at 350). The key inquiry is not whether the plaintiffs have raised common questions, but whether "class treatment will 'generate common *answers* apt to drive the resolution of the litigation.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 350) (emphasis in original). Every question of law or fact need not be common to the class. Rather, all Rule 23(a)(2) requires is "a single significant question of law or fact." *Id.* (internal quotation omitted); *see Meyer v. Portfolio Recovery Assocs.*, 707 F.3d 1036, 1041–42 (9th Cir. 2012). The existence of "shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (amended).

Plaintiffs' allegations that investors were defrauded by the same misrepresentations over the same period of time and suffered similar losses as a result are sufficient to fulfill Rule 23's commonality requirement. Common questions of law and fact include whether Defendants falsely assured investors that Zillow's comarketing program complied with RESPA, whether the individual Defendants acted with the requisite scienter, and whether Defendants' false statements and omissions artificially inflated the price of Zillow securities and caused economic losses to members of the class. *See, e.g.*, *Di Donato*, 333 F.R.D. at 435. These common questions "form

1  the core of a case for securities fraud." *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. at
2  635; *In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 589 (N.D. Cal. 2009).

3        **3.   Typicality**

4        Plaintiffs must next show that their claims are typical of the class. Fed. R. Civ. P.
5  23(a)(3). "The test of typicality is whether other members have the same or similar injury,
6  whether the action is based on conduct which is not unique to the named plaintiffs, and whether
7  other class members have been injured by the same course of conduct." *Ellis*, 657 F.3d at 984
8  (internal quotation omitted). The commonality and typicality inquiries, which "tend to merge,"
9  both serve as "guideposts for determining whether under the particular circumstances
10 maintenance of a class action is economical and whether the named plaintiff's claim and the
11 class claims are so interrelated that the interests of the class members will be fairly and
12 adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5 (internal quotation omitted).
13 Ultimately, representative class claims are 'typical' if they are "reasonably co-extensive with
14 those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at
15 1020; *see Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (noting the "permissive"
16 nature of the typicality inquiry).

17       The Court finds that the claims of the named plaintiffs are typical of the class. Like other
18 members of the proposed class, Plaintiffs purchased Zillow securities during the class period at
19 prices they allege were artificially inflated by Defendants' false or misleading statements and
20 suffered damages when the price of securities declined because the truth was revealed.

21       Defendants argue that Plaintiffs have not established typicality because they have not
22 explained whether "a typical plaintiff" purchased securities before or after the first alleged
23 corrective disclosure, held only common stock or convertible notes or both, claims an economic
24 loss of thousands of dollars or more or less, and is a current or former Zillow investor. (Dkt. No.
25 86 at 21.) But Defendants do not explain why, nor have they provided any authority to establish,
26 that Plaintiffs bear the burden of answering these questions to satisfy the typicality standard.

In fact, "[t]he substantial majority of courts that have addressed the propriety of class certification based on the timing of the class representative's sale or purchases have found . . . that the timing of the transactions does not necessarily create fundamentally divergent interests with the putative class." *Thorpe*, 2016 WL 4006661, slip op. at 9 (collecting cases); *see Blackie*, 524 F.2d at 909–10 (noting that "[i]t will be in the interest of each class member to maximize the inflation from [the misrepresentations] at every point in the class period, both to demonstrate the sine qua non liability and to maximize his own potential damages" and therefore "interim corrective disclosures . . . do not . . . bring predisclosure purchasers into conflict with post-disclosure purchasers"); *In re JPMorgan Chase & Co. Sec. Litig.*, 2015 WL 10433433, slip op. at 4 (S.D.N.Y. 2015) (noting the court is not aware of any case "holding that a lead plaintiff seeking class certification in a securities fraud suit fails to establish adequacy or typicality where that plaintiff made securities purchases after an alleged partial corrective disclosure but before the final corrective disclosure"); *S. Ferry LP No. 2 v. Killinger*, 271 F.R.D. 653, 659–61 (W.D. Wash. 2011) (finding named plaintiff typical even though he purchased securities after the date the defendants claimed they made a fully corrective disclosure); *Katz v. Comdisco, Inc.*, 117 F.R.D. 403, 411 (N.D. Ill. 1987) ("When a named plaintiff alleges a common course of conduct in a securities class action, the fact that he purchased late in the class period does not vitiate his suitability as a class representative."). Courts have also "repeatedly concluded that stock purchasers can represent purchasers of debt instruments and vice versa in the same action." *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 445 (S.D. Tex. 2002) (collecting cases).

At most, Defendants' arguments raise speculative potential conflicts. But "[m]ere speculation as to conflicts that may develop" is not sufficient "to support denial of initial class certification." *Soc. Servs. Union, Local 535 v. Cnty. of Santa Clara*, 609 F.2d 944, 948 (9th Cir. 1979). If any of these differences later appear significant, the Court can accommodate the divergent interests through the division of the above defined class into subclasses. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before

1   final judgment."); *see also Blackie*, 524 F.2d at 909 ("[Rule 23(c)(5)] provides the mechanism of

2   subsequent creation of subclasses . . . to deal with latent conflicts which may surface as the suit

3   progresses.").

### 4.   Adequacy of Representation

5         Finally, Rule 23(a)(4) requires that the named plaintiff "fairly and adequately" protect the

6   interests of the class. Fed. R. Civ. P. 23(a)(4). To determine whether the representative parties

7   will adequately represent a class, the Court must examine (1) whether the named plaintiff and his

8   counsel have any conflicts of interest with other class members; and (2) whether the named

9   plaintiff and his counsel will prosecute the action vigorously on behalf of the class. *Ellis*, 657

10  F.3d at 985 (citing *Hanlon*, 150 F.3d at 1020). As the Ninth Circuit has noted, adequate

11  representation depends upon "an absence of antagonism between representatives and absentees[]

12  and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985 (internal

13  quotation omitted). Here, the Court finds that Plaintiffs and their counsel will adequately

14  represent the proposed class.

15        Defendants argue that the lead plaintiffs are merely "serving as figureheads" in this suit

16  and are not taking a sufficiently active role in leading and controlling the litigation. (Dkt. No. 86

17  at 23.) Defendants point to various deposition excerpts to show that the named plaintiffs have not

18  reviewed or commented on the motion to dismiss briefing or any discovery requests. Plaintiffs

19  respond that each class representative is sufficiently involved and knowledgeable about the

20  underlying facts and legal theories in this matter. (Dkt. No. 92 at 11.) The Court agrees with

21  Plaintiffs.

22        Defendants cite no authority for their claim that the failure to review all the legal briefing

23  in the case is grounds for finding a named plaintiff inadequate. While a class representative must

24  be familiar with the basic elements and "the gravamen" of her claim, she need not be "intimately

25  familiar with every factual and legal issue in the case." *In re Worlds of Wonder Sec. Litig.*, 1990

26  WL 61951, slip op. at 3 (N.D. Cal. 1990); *see also In re THQ, Inc. Sec. Litig.*, 2002 WL

1832145, slip op. at 6–7 (C.D. Cal. 2002) (finding named plaintiffs were not inadequate where one was unfamiliar with the names of six of the seven individual defendants and another was unaware of the results of prior motions to dismiss in the case). Courts finding a named plaintiff inadequate have done so only in flagrant cases where the named plaintiffs knew nothing about the case. *See In re Facebook, Inc., PPC Advert. Litig.*, 282 F.R.D. 446, 454 (N.D. Cal. 2012), *aff'd sub nom. Fox Test Prep v. Facebook, Inc.*, 588 F. App'x 733 (9th Cir. 2014) (named plaintiff "testified in his deposition that he knows essentially nothing about the case"); *Bodner v. Oreck Direct, LLC*, 2007 WL 1223777, slip op. at 1 (N.D. Cal. 2007) (plaintiff met his attorney in person for the first time the day before his deposition, became involved in the action by responding to an advertisement by his attorney, did not read the complaint, and showed an "undeniable and overwhelming ignorance regarding the nature of [the] action, the facts alleged, and the theories of relief against defendant"); *In re Storage Technology Corp. Sec. Litig.*, 113 F.R.D. 113, 118 (D. Colo. 1986) (plaintiff "appeared unaware of even the most material aspects of [her] action . . . [not knowing] why these particular defendants are being sued . . . [and having] no conception of the class of people she purportedly represents").

Here, Plaintiffs' deposition testimony demonstrates that they are sufficiently familiar with the basis for the suit and their responsibilities as lead plaintiffs. (*See* Dkt. Nos. 93-2 at 7 (Ms. Offutt explaining the purpose of a class action suit); 93-2 at 8 (Ms. Offutt explaining Zillow's alleged fraud); 93-3 at 4–5 (Mr. Harris identifying the individual Defendants as officers of the company who allegedly made false statements); 93-4 at 5 (Ms. Choy explaining the alleged fraud).) The named plaintiffs have also submitted declarations stating that they are willing to serve as representative parties and understand that class representatives are responsible for protecting and advancing the interests of absent class members. (Dkt. Nos. 75-2, 75-3, 75-4.) The Court finds the adequacy requirement is satisfied.

//

//

1    **D.       Rule 23(b)(3) Requirements**

2            After satisfying the Rule 23(a) prerequisites, a plaintiff must also demonstrate that the

3    case is maintainable as a class action under one of the three Rule 23(b) prongs. Here, Plaintiffs

4    argue that the class is certifiable under Rule 23(b)(3), which requires two separate inquiries: (1)

5    do issues common to the class "predominate" over issues unique to individual class members,

6    and (2) is the proposed class action "superior" to other methods available for adjudicating the

7    controversy. Fed. R. Civ. P. 23(b)(3). Ultimately, certification under Rule 23(b)(3) is appropriate

8    "whenever the actual interests of the parties can be served best by settling their differences in a

9    single action." *Hanlon*, 150 F.3d at 1023 (quoting 7A Charles Alan Wright, Arthur R. Miller &

10   Mary Kay Kane, *Federal Practice & Procedure* § 1777 (2d ed. 1986)).

11            **1.  Predominance**

12            The predominance inquiry under Rule 23(b)(3) "tests whether proposed classes are

13   sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v.*

14   *Windsor*, 521 U.S. 591, 615–16 (1997); *Abdullah*, 731 F.3d at 964. This inquiry presumes the

15   existence of common factual or legal issues required under Rule 23(a)'s "commonality" element

16   and instead "focuses on the relationship between the common and individual issues." *Hanlon*,

17   150 F.3d at 1023. "When common questions present a significant aspect of the case and they can

18   be resolved for all members of the class in a single adjudication, there is a clear justification for

19   handling the dispute on a representative rather than on an individual basis." *Id.*

20            Considering whether questions of law or fact common to class members predominate

21   generally begins with the elements of the underlying cause of action. *Erica P. John Fund, Inc. v.*

22   *Halliburton Co.* (*Halliburton* I), 563 U.S. 804, 809 (2011). The elements of a private securities

23   fraud claim based on violations of section 10(b) of the Securities Exchange Act of 1934 and

24   Securities and Exchange Commission Rule 10b–5 are: "(1) a material misrepresentation or

25   omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or

26   omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or

omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011). Whether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance. *Halliburton* I, 563 U.S. at 810. Here, Defendants contend that class members who purchased securities after May 4, 2017 cannot rely on a classwide presumption of reliance and therefore individual reliance issues predominate over common questions. (*See* Dkt. No. 86 at 27.)

Investors can recover damages in a private securities fraud action only if they prove they relied on the defendant's misrepresentation in deciding to buy or sell a company's stock. The most direct way a plaintiff can prove reliance is by showing they were aware of a company's statement and purchased stock based on that specific misrepresentation. *Amgen*, 568 U.S. at 461. But plaintiffs may also satisfy the reliance element by invoking the "fraud-on-the-market" presumption. *Id.* (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 241–49 (1988)). The fraud-on-the-market presumption is based on the theory that the price of stock traded in an efficient market reflects all public, material information, including material misrepresentations. *Id.* at 461–62 (citing *Basic*, 485 U.S. at 245–47). Therefore, anyone who buys or sells stock at the market price may be presumed to have relied on those misrepresentations in purchasing the security. *Amgen*, 568 U.S. at 462. The fraud on the market theory "has particular significance in securities-fraud class actions" because absent the presumption, individual reliance issues would overwhelm questions common to the class. *Id.* at 462–63.

To invoke the fraud on the market presumption of reliance, securities fraud plaintiffs must prove (1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed. *Halliburton Co. v. Erica P. John Fund, Inc.* (*Halliburton* II), 573 U.S. 258, 268 (2014). The first three prerequisites are directed at price impact—whether the alleged misrepresentations affected the market price in the first place—because without price impact, the fraud on the market theory and the presumption of

reliance collapse. *Id*. at 278. Although materiality is an essential predicate of the fraud-on-the-market theory, Rule 23(b) does not require a plaintiff invoking the fraud-on-the-market presumption of reliance to prove materiality at the class certification stage because such proof is not necessary to ensure satisfaction of the predominance requirement. *Amgen*, 568 U.S. at 467–68. Materiality is a common question and failure of proof on that common question will simply defeat plaintiffs' claims on the merits—not result in individual questions predominating. *Id*.

Defendants may defeat the fraud-on-the-market presumption of reliance at the class certification stage with direct evidence that the misrepresentation did not in fact affect the stock price—*i.e.*, did not have a price impact. *Halliburton* II, 573 U.S. at 279. Defendants may also defeat the presumption by demonstrating that "'news of the [truth] credibly entered the market and dissipated the effects of [prior] misstatements.'" *Amgen*, 568 U.S. at 481–82 (quoting *Basic*, 485 U.S. at 248–49). But such a truth-on-the-market defense goes to materiality and therefore "'[p]roof of that sort is a matter for trial'" or summary judgment, not class certification. *Id*. (quoting *Basic*, 485 U.S. at 248 n.29).

Here, Plaintiffs plead the fraud-on-the-market theory, relying on an expert report opining that Zillow's securities traded in an efficient market during the class period. (Dkt. Nos. 74 at 17–26; 75-5 at 13–47; (Dr. Nye's analysis of the Cammer factors and other indicia of market efficiency); 75-6.) Defendants do not dispute that Plaintiffs have shown they are entitled to the presumption. (*See generally* Dkt. No. 86.) Having reviewed the report, the Court finds the Plaintiffs have satisfied the prerequisites and established for the purposes of the class certification inquiry that they are entitled to a classwide presumption of reliance.

Defendants argue that the presumption is rebutted as to class members who purchased securities after May 4, 2017 because "[b]y that date, there is no doubt that 'the "market makers" were privy to the truth'" and it would have been unreasonable, therefore, to place any continued reliance on Zillow's alleged misrepresentations. (Dkt. No. 86 at 27 (quoting *Basic*, 485 U.S. at 248).) But Defendants' argument is a premature truth-on-the-market defense that does not pose

an obstacle to class certification. *See Amgen*, 568 U.S. at 481–82; *Thorpe*, 2016 WL 4006661, slip op. at 13 (finding the defendants' "'truth on the market' defense . . . is inextricably linked to the materiality of the statements and thus irrelevant at the class certification stage"); *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. at 640–41 (same).

The core questions of whether Defendants' statements were materially false, whether Defendants acted with requisite scienter, and whether their conduct inflated the price of Zillow securities are central to all class members' claims. "Without favorable findings on these critical questions related to liability, no member of the class can succeed." *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. at 640. Furthermore, Plaintiffs' expert proposes a workable method for calculating damages on a classwide basis that is consistent with their theory of liability. (Dkt. No. 75-5 at 47–50); *Di Donato*, 333 F.R.D. at 446–48. Issues such as individual damages and the timing of sales and purchases "do not have the same primacy." *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. at 640. Accordingly, the Court finds common issues predominate over individual ones.

### 2.   Superiority

Rule 23(b)(3) also requires the Court to find that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When undertaking this inquiry, the Court considers (1) the interest of individuals within the class in controlling their own litigation; (2) the extent and nature of any pending litigation commenced by or against the class involving the same issues; (3) the convenience and desirability of concentrating the litigation in a particular forum; and (4) the manageability of the class action. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D); *Zinzer v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). Consideration of these factors must "focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinzer*, 253 F.3d at 1190. Courts generally recognize that "[i]f united by a common core of facts, and a presumption of

reliance on an efficient market, class actions are the superior way to litigate a case alleging violations of securities fraud." *Vinh Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 575 (C.D. Cal. 2012) (citing *In re HealthSound Corp. Sec. Litig.*, 257 F.R.D. 260, 284 (N.D. Ala. 2009)).

In this case, the Court is not aware of any other action brought on behalf of members of the putative class and the parties do not identify any. Moreover, as discussed above, the class will include a significant number of members and where that many identical complaints would have to be filed, "it is superior to concentrate claims through a class action in a single forum." *In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. at 592. Finally, the Court does not see any particular management difficulties with this case proceeding as a class action. Plaintiffs have met the superiority requirement of Rule 23(b)(3).

## III.    CONCLUSION

For the foregoing reasons, the Court GRANTS the Plaintiffs' motion for class certification (Dkt. No. 74) and DENIES the Defendants' motions to strike (Dkt No. 95). The Court further ORDERS:

1.  The class is certified as:

> All persons who purchased or otherwise acquired Zillow securities between November 17, 2014 and August 8, 2017, both dates inclusive, excluding Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest;

2.  Jo Ann Offutt, Raymond Harris, and Johanna Choy are each appointed as representatives of the class;

3.  The Rosen Law Firm, P.A. are appointed as class counsel; and

4.  The parties shall meet and confer on the form and manner of providing notice, and within sixty (60) days of the entry of this order, submit their proposal for notice to the class to the Court for approval.

DATED this 28th day of October 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C17-1387-JCC
PAGE - 17