1    The Honorable John C. Coughenour

2

3

4    UNITED STATES DISTRICT COURT
     FOR THE WESTERN DISTRICT OF WASHINGTON
5    AT SEATTLE

6    In re Zillow Group, Inc.
     Securities Litigation                        No. 2:17-cv-01387-JCC
7
                                                   UNOPPOSED MOTION FOR FINAL
8                                                  APPROVAL OF CLASS ACTION
                                                   SETTLEMENT
9
                                                   Jury Trial Demanded
10
                                                   **NOTE ON MOTION CALENDAR:**
11                                                 **August 8, 2023 at 9:00 a.m.**
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

{00558319;1 }UNOPPOSED MOTION FOR FINAL APPROVAL       PRAESIDIO CONSUMER LAW PLLC
OF CLASS ACTION SETTLEMENT                            1916 Pike Place, Suite 12, Seattle, WA 98101 (646) 202-0629

752897263.1

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ..................................................................... 1

II.  OVERVIEW OF THE LITIGATION ............................................................. 3

    A.   Plaintiffs' Allegations ..................................................................... 3

    B.   Procedural History ......................................................................... 3

    C.   The Settlement ............................................................................... 6

III. THE SETTLEMENT WARRANTS FINAL APPROVAL............................... 7

    A.   The Overall Strength of Plaintiffs' Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement. ................................................................................ 8

        1.   Plaintiffs Faced Risks With Respect to Expert Discovery ......................... 9

        2.   Plaintiffs Faced The Risk of An Adverse Summary Judgment Ruling ......................................................................................... 9

        3.   Maintaining Class Action Status Through Trial Is Not Guaranteed ......... 10

        4.   Plaintiffs Faced The Myriad Risks Presented by Trial. ........................... 11

    B.   The Amount Obtained in Settlement Supports Final Approval. ......................... 11

    C.   The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval. ................................................................................ 13

    D.   The Settlement is the Product of Arm's-Length Negotiations ............................. 14

    E.   The Favorable Reaction of the Class Supports Approval. ................................. 17

    F.   The Settlement Meets the Remaining Rule 23(e)(2) Factors .............................. 18

        1.   The Proposed Method for Distributing Relief Is Effective. ...................... 18

        2.   The Proposed Award of Attorneys' Fees is Appropriate. ......................... 19

        3.   The Parties Have No Other Agreements. .............................................. 19

        4.   There is No Preferential Treatment; the Proposed Plan of Allocation Treats Class Members Equitably. ............................................ 19

    G.   The Court Should Approve the Plan of Allocation ............................................ 20

IV.  NOTICE TO THE CLASS SATISFIED DUE PROCESS................................ 21

V.   CONCLUSION ....................................................................................... 23

1

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

2

3

<u>Cases</u>

4

*Baker v. SeaWorld Ent., Inc.*,
No. 14CV2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19, 2020)............................ 23

5

*Christine Asia Co. v. Yun Ma*,
6  No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............................ 16

7
*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010) ...................................................................................... 18
8

9  *Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) .................................................................................................... 18
10

11 *Destefano v. Zynga, Inc.*,
No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ..................................... 18

12
*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005).................................................................................................................. 10
13

14 *Evans v. Jeff D.*,
475 U.S. 717 (1986).................................................................................................................... 7
15

16 *Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................................................................ 8, 12
17

18 *Hefler v. Wells Fargo & Co.*,
No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..................................... 9

19
*Hubbard v. BankAtlantic Bancorp, Inc.*,
20  688 F.3d 713 (11th Cir. 2012) .................................................................................................. 12

21 *In re BankAtlantic Bancorp, Inc.*,
No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011).......................................... 11
22

23 *In re Datatec Sys., Inc. Sec. Litig.*,
No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007)........................................ 21

24
*In re Gen. Instrument Sec. Litig.*,
25  209 F. Supp. 2d 423 (E.D. Pa. 2001) ........................................................................................ 21

26 *In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................................... 13

UNOPPOSED MOTION FOR FINAL APPROVAL          PRAESIDIO CONSUMER LAW PLLC
OF CLASS ACTION SETTLEMENT                   1916 Pike Place, Suite 12, Seattle, WA 98101 (646) 202-0629

752897263.1

ii

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ..................... 9, 13, 15, 16

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................................................... 14, 23

*In re LJ Int'l, Inc. Sec. Litig.*,
No. CV0706076GAFJWJX, 2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) ......................... 10

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ......................................................................... 7, 12, 13, 14

*In re NeoPharm, Inc. Sec. Litig.*,
705 F. Supp. 2d 946 (N.D. Ill. 2010) ................................................................................ 10

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................... passim

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ............................................................................................ 10

*In re Pac. Enterprises Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .............................................................................................. 15

*In re Portal Software, Inc. Sec. Litig.*,
No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) .................................. 23

*In re Portal Software, Inc. Sec. Litig.*,
No. C 03 5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) .................................. 14

*In re Puda Coal Sec. Inc., Litig.*,
30 F. Supp. 3d 230 (S.D.N.Y. 2014).................................................................................. 9

*In re Rambus Inc. Derivative Litig.*,
No. C 06-3513 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009).............................. 17

*In re Regulus Therapeutics Inc. Sec. Litig.*,
No. 3:17-CV-182-BTM-RBB, 2020 WL 6381898 (S.D. Cal. Oct. 30, 2020)......................... 13

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003)................................................................................ 10

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) ..................................................................................... 9

UNOPPOSED MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT

PRAESIDIO CONSUMER LAW PLLC
1916 Pike Place, Suite 12, Seattle, WA 98101 (646) 202-0629

iii

752897263.1

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ................................................................... 7

*In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    No. MDL 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ............................ 14

*In re Washington Mut., Inc.*,
    2015 WL 12803633 (W.D. Wash. June 22, 2015) ................................................ 22

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ......................................................... 20

*In re Zynga Inc. Sec. Litig.*,
    No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ................................ 14

*Kmiec v. Powerwave Techs., Inc.*,
    No. SACV1200222CJCJPRX, 2016 WL 5938709 (C.D. Cal. July 11, 2016) ......................... 14

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) ....................................................... 16

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) .................................................................. 8

*Low v. Trump Univ., LLC*,
    246 F. Supp. 3d 1295 (S.D. Cal. 2017) ........................................................ 8

*Low v. Trump Univ., LLC*,
    881 F.3d 1111 (9th Cir. 2018) ................................................................ 22

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
    No. 2:10-CV-00302 MRP, 2013 WL 6577020 (C.D. Cal. Dec. 5, 2013) ............................ 18

*N. Sound Cap. LLC v. Merck & Co.*,
    938 F.3d 482 (3d Cir. 2019) .................................................................. 22

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ......................................................... 11, 16

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ............................................................. 8, 12

*Pace v. Quintanilla*,
    No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) ........................... 16

UNOPPOSED MOTION FOR FINAL APPROVAL        PRAESIDIO CONSUMER LAW PLLC
OF CLASS ACTION SETTLEMENT        1916 Pike Place, Suite 12, Seattle, WA 98101 (646) 202-0629

iv

752897263.1

*Riker v. Gibbons*,
No. 3:08-CV-00115-LRH, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) ............................ 14, 20

*Robbins v. Koger Properties, Inc.*,
116 F.3d 1441 (11th Cir. 1997) ............................................................... 11

*Roberti v. OSI Sys., Inc.*,
No. CV1309174MWFMRW, 2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ........................... 15

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .................................................................. 21

*Salazar v. Midwest Servicing Grp., Inc.*,
No. 17-CV-0137-PSG-KS, 2018 WL 3031503 (C.D. Cal. June 4, 2018) ................................ 8

*Satchell v. Fed. Express Corp.*,
No. C 03 2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ............................................ 15

*Todd v. STAAR Surgical Co.*,
No. CV 14-5263 MWF (GJSx), 2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ...................... 15

*Tom v. Com Dev USA, LLC*,
No. 16CV1363PSGGJSX, 2017 WL 10378629 (C.D. Cal. Dec. 4, 2017) ................................ 8

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ............................................................... 7, 8

**Statutes**

12 U.S.C. §§ 2601, 2607 .................................................................... 3

15 U.S.C. § 78u-4(a) ........................................................................ 19, 22

**Rules**

Fed. R. Civ. P. 23 ......................................................................... passim

**Other Authorities**

Manual for Complex Litigation (Third) § 30.44 (1995) ............................................. 17

UNOPPOSED MOTION FOR FINAL APPROVAL                 PRAESIDIO CONSUMER LAW PLLC
OF CLASS ACTION SETTLEMENT                          1916 Pike Place, Suite 12, Seattle, WA 98101 (646) 202-0629

752897263.1                                    v

Class Representatives Jo Ann Offutt, Raymond Harris, and Johanna Choy ("Plaintiffs"), individually and on behalf of all other persons similarly situated, submit this memorandum in support of their Unopposed Motion for Final Approval of the Settlement and Plan of Allocation.[1]

## I.  PRELIMINARY STATEMENT

The Parties have reached a settlement to resolve the claims in the above-captioned securities class action ("Action") for $15,000,000 ("Settlement"). The Settlement, which was reached after fact discovery and extensive arm's-length settlement discussions (including two private mediation sessions guided by experienced mediators), provides a fair, reasonable, and adequate result for investors in light of the risks associated with litigation. The Settlement recovers approximately 6% of the alleged *maximum* estimated damages of $247.1 million under Plaintiffs' best-case scenario—above many settlements approved in this Circuit—and approximately *22%* of Defendants' worst-case scenario of $66 million in damages.

The terms of the Settlement are set forth in the Stipulation. In the Court's April 3, 2023 Order Granting Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") (Dkt. No. 175), the Court preliminarily approved the Settlement and directed that notice be disseminated to potential members of the Class.

Plaintiffs now seek final approval of the Settlement. If approved, the Settlement will completely resolve the Action, settling all claims of Class Members who have not submitted valid requests for exclusion. The Settlement provides a substantial recovery to the Class despite several obstacles that Plaintiffs faced, including Defendants' anticipated motion for summary judgment, Defendants' potential defenses, the risks of prosecuting this litigation through trial and appeals,

---

[1] All capitalized terms not otherwise defined shall have the same meanings ascribed to them in the Stipulation of Settlement dated as of March 31, 2023 (the "Stipulation") (Dkt. No. 173).

and the real danger that Plaintiffs would recover nothing for the Class.

To grant final approval of the Settlement, this Court will evaluate whether it is "fair, reasonable, and adequate," focusing on the adequacy of the Settlement Amount in consideration for the release of the claims in the Action. Fed. R. Civ. P. 23(e). Plaintiffs believe their case is strong, but they determined that executing the Settlement was in the best interests of the Class, especially given the risks inherent in this complex litigation. Plaintiffs faced numerous material obstacles to prevailing on their claims, including concluding expert discovery, surviving Defendants' anticipated motion for summary judgment, proving their claims at trial (assuming the case was not thrown out at summary judgment), opposing post-trial motions (assuming a verdict in favor of Plaintiffs), and opposing appeals of a judgment for Plaintiffs. Rather than engaging in expensive, protracted litigation with no assurance of success, Plaintiffs—with the benefit of complete fact discovery—agreed to an early resolution of this action as the best outcome for the Class. Through protracted negotiations with Defendants, Plaintiffs obtained a Settlement that is fair, reasonable, and adequate under the circumstances. The Settlement eliminates the risks of continued litigation and locks in a substantial recovery for the Class. In light of the obstacles to recovery and the significant amount of time and expenses that continued litigation would entail, the Court should approve the Settlement as fair, reasonable, and adequate.

The Court will also evaluate whether the proposed Plan of Allocation ("Plan") of the Net Settlement Fund is fair, reasonable, and adequate. Here, Class Counsel developed the proposed Plan in consultation with Plaintiffs' damages expert and the Claims Administrator. The proposed Plan comports with applicable legal principles and Plaintiffs' theory of damages, and in no way favors Plaintiffs over other members of the Class. The Court should approve the Plan.

## II.    OVERVIEW OF THE LITIGATION

### A.    Plaintiffs' Allegations

The Complaint alleges that Zillow, Spencer Rascoff, and Kathleen Phillips violated the federal securities laws by making false or misleading statements or omissions by falsely assuring investors that Zillow's "co-marketing program" complies with Section 8(a) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, 2607. The Complaint alleges that the co-marketing program was in reality designed to allow participating real estate agents to refer mortgage business to participating lenders. Plaintiffs assert that Defendants made a series of misleading statements regarding Zillow's legal compliance by failing to disclose the co-marketing program's alleged illegality, particularly after the Consumer Financial Protection Bureau ("CFPB") launched an investigation into the program. Plaintiffs allege that Defendants' misrepresentations about Zillow's legal compliance caused them, and other Class Members, to purchase the company's stock at artificially inflated prices, and that these allegedly false and misleading statements and omissions caused Class Members to suffer damages when the true facts entered the market. Defendants have denied, and continue to deny, any and all allegations of fault, liability, wrongdoing, or damages.

### B.    Procedural History

On August 22, 2017, the action *Vargosko v. Zillow Group, Inc., et al*., Case No. 2:17-cv-06207, was filed in the U.S. District Court for the Central District of California, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") (the "*Vargosko* Action"). On September 14, 2017, the action *Shotwell v. Zillow Group, Inc., et al.*, Case No. 2:17-cv-01387 (W.D. Wash.) was commenced alleging the same claims (the "*Shotwell* Action"). Dkt. No. 1.

Pursuant to a Private Securities Litigation Reform Act of 1995 ("PSLRA") notice, on

October 23, 2017, Plaintiffs timely filed a motion seeking appointment as lead plaintiffs and approval of their counsel, The Rosen Law Firm, P.A. ("Rosen Law"), in the *Vargosko* Action. On November 15, 2017, the *Vargosko* Action was transferred to this Court.

On November 16, 2017, Plaintiff James Shotwell filed an amended complaint in the *Shotwell* Action, adding claims under Sections 11 and 15 of the Securities Act of 1933 ("Securities Act"). Dkt. No. 10.

On December 15, 2017, Plaintiffs filed a renewed motion seeking appointment as Lead Plaintiffs, approval of Rosen Law as Lead Counsel, and to consolidate the *Vargosko* Action and the *Shotwell* Action. Dkt. No. 15. On January 5, 2018, the Court granted Plaintiffs' motion, consolidated the actions and restyled the Action as *In re Zillow Group, Inc. Securities Litigation,* Case No. 2:17-cv-01387-JCC (W.D. Wash.). The Court appointed Class Representatives as Lead Plaintiffs, appointed Rosen Law as Lead Counsel, and appointed Hall & George PLLC as Local Counsel. Dkt. No. 29.[2]

Plaintiffs filed the Consolidated Amended Complaint on February 16, 2018 (Dkt. No. 35) and Defendants filed a motion to dismiss on April 5, 2018. Dkt. No. 36. Plaintiffs opposed that motion on May 21, 2018 (Dkt. No. 39), and Defendants filed a reply on June 20, 2018. Dkt. No. 42. On October 2, 2018, the Court granted Defendants' motion to dismiss, permitting Plaintiffs leave to amend the Exchange Act claims and dismissing the Securities Act claims with prejudice.

Plaintiffs timely filed the operative Second Consolidated Amended Complaint on November 16, 2018. Dkt. No. 47. On December 17, 2018, Defendants filed a motion to dismiss

---

[2] Colin M. George, formerly of Hall & George PLLC, later formed Praesidio Consumer Law PLLC. Mr. George served as Local Counsel for Class Representatives since the transfer of the Vargosko Action to this Court. Mr. George now serves in the King County Prosecuting Attorney's Office - Civil Division. The undersigned Mr. Kelly-Stallings has taken over for Mr. George for the remainder of this Action.

(Dkt. No. 50), which Plaintiffs opposed on January 16, 2019. Dkt. No. 51. The motion was fully briefed on February 6, 2019 with the filing of Defendants' reply. Dkt. No. 53. On April 19, 2019, the Court denied Defendants' motion to dismiss. Dkt. No. 54. Defendants filed an Answer on May 3, 2019. Dkt. No. 55.

The Parties began discovery in the fall of 2019. The parties exchanged documents, interrogatories, and requests for admission, and conducted numerous fact witness depositions.

With fact discovery underway, on October 11, 2019, Plaintiffs filed a motion for class certification, including a report from a market efficiency expert, Dr. Zachary Nye. Dkt. No. 74. Defendants deposed all three Plaintiffs in February 2020 and deposed Dr. Nye on March 10, 2020. On March 20, 2020, Defendants filed their opposition to the class certification motion, including an expert report from Lucy P. Allen. Dkt. Nos. 86-87. On May 29, 2020, Class Representatives filed their reply in further support of their motion for class certification, including a rebuttal report from Dr. Nye. Dkt. Nos. 92-93. On October 28, 2020, the Court certified the Class. Dkt. No. 100.

On November 12, 2020, Defendants petitioned the Ninth Circuit for interlocutory appeal of the Court's order granting class certification. *Jo Ann Offutt, et al., v. Zillow Group, Inc., et al.*, Case No. 20-80155 (9th Cir.). Plaintiffs opposed the request for interlocutory appeal on November 24, 2020. On February 17, 2021, the Ninth Circuit denied Defendants' petition for interlocutory appeal.

On March 8, 2021, Plaintiffs informed the Court that Strategic Claims Services ("SCS"), on Plaintiffs' behalf, had notified Zillow investors that the Court had certified the Class and of their options concerning the Action. Dkt. No. 111. Plaintiffs filed a supplemental declaration from SCS on April 28, 2021 informing the Court, *inter alia*, that only three valid requests for exclusion from the Class were timely submitted. Dkt. No. 114.

The parties completed fact discovery on November 17, 2021. Plaintiffs subsequently filed a motion to compel on May 19, 2022. Dkt. No. 141. Defendants opposed the motion on June 17, 2022 (Dkt. No. 149), and Plaintiffs filed a reply on July 1, 2022 (Dkt. No. 155). The Court denied Plaintiffs' motion to compel on July 25, 2022.  Dkt. No. 162.

The Parties exchanged both affirmative and rebuttal expert reports concerning RESPA compliance and damages but did not conduct depositions of those experts prior to agreeing to settle the Action. Declaration of Jonathan Stern ("Stern Decl."), ¶14.

### C. The Settlement

The Parties participated in two mediation sessions, neither of which resulted in settlement: (i) first, with Michelle Yoshida of Phillips ADR on October 30, 2020; and (ii) second, with Layne Phillips (Ret.) of Phillips ADR, on January 24, 2022. Stern Decl., ¶5. Both mediation sessions involved the exchange of detailed opening and reply mediation statements. *Id.*

In the summer of 2022, the Parties began to discuss settlement directly. *Id.*, ¶6. The Parties discussed settlement over the phone multiple times, and conducted a full-day settlement meeting on October 11, 2022. *Id.* At that meeting the parties reached a settlement in principle. *Id.* The Stipulation memorializes the agreement between the Parties to fully and finally settle the Action and to fully release all Released Claims against Defendants and the Released Parties with prejudice in return for $15 million. *Id.*

Plaintiffs moved for preliminary approval of the Settlement on March 31, 2023. Dkt. No. 172. The Court entered the Preliminary Approval Order on April 3, 2023, granting preliminary approval and directing the Claims Administrator to issue notice of the Settlement to Class Members. Dkt. No. 175. Per the Preliminary Approval Order, the Notice states that, in order to receive a portion of the Settlement, Class Members must submit a claim form by July 11, 2023 and that the deadline to object to the Settlement, including to the proposed award of attorneys'

fees, litigation expenses, and service awards to Plaintiffs, is July 18, 2023. Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Objections ("Bravata Decl.", attached as Exhibit 1 to the Stern Decl.), ¶12 and Ex. B. To date, neither Class Counsel nor SCS has received any objections to the Settlement from Class Members. Stern Decl., ¶36; Bravata Decl., ¶12.

### III.    THE SETTLEMENT WARRANTS FINAL APPROVAL.

Rule 23 requires judicial approval of class action settlements. Fed. R. Civ. P. 23(e). It is within the "sound discretion of the district courts to appraise the reasonableness of [] settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). The Ninth Circuit strongly favors settlement "particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits").

Federal Rule of Civil Procedure 23(e)(2) provides that, to determine if a settlement is fair, reasonable, and adequate, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Ultimately, "[a] settlement should be approved if 'it is fundamentally fair, adequate and reasonable.'" *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (same). In evaluating whether settlements

are fair, reasonable, and adequate, courts in the Ninth Circuit consider the following factors, some of which overlap with the requirements of Rule 23(e)(2):

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant[3]; and the reaction of the class members to the proposed settlement.

*Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ((citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Keeping in mind that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements," courts should not convert settlement approval into an inquiry on the merits. *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Here, the Rule 23(e) and Ninth Circuit factors weigh in favor of final approval.

### A.    The Overall Strength of Plaintiffs' Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement.

The expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement. *Torrisi*, 8 F.3d at 1375–76 (finding that "the cost, complexity and time of fully litigating the case" supported approval). A settlement's "elimination of risk, delay, and further expenses weighs in favor of approval." *Salazar v. Midwest Servicing Grp., Inc.*, No. 17-CV-0137-PSG-KS, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018). Courts favor settlement where the case is "complex and likely to be expensive and lengthy to try" and presents material risks beyond the "inherent risks of litigation." *Low v. Trump Univ., LLC*, 246 F.

---

[3] While this case arises from a Federal Government investigation of Zillow, no government entity actually participated in this case or settlement. This factor therefore is neutral. *See Tom v. Com Dev USA, LLC*, No. 16CV1363PSGGJSX, 2017 WL 10378629, at *5 (C.D. Cal. Dec. 4, 2017).

Supp. 3d 1295, 1301 (S.D. Cal. 2017). Securities actions are complex and their outcomes uncertain. *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at \*13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). Class Counsel and Plaintiffs carefully evaluated the merits of this case in light of the risks and potential weaknesses before entering into the Settlement.

While Plaintiffs believe that their case is strong, they remain cognizant of the substantial risk posed to the Class in continuing to litigate this action. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at \*7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"); *see also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999) (discussing several instances where settlement was rejected by a court only to have the class' ultimate recovery be less than the proposed settlement).

### 1.    Plaintiffs Faced Risks With Respect to Expert Discovery.

Securities class action plaintiffs face myriad procedural hurdles. Failing at any one stage of the litigation could defeat the class action. Plaintiffs agreed to the Settlement after completing fact discovery but before concluding expert discovery, which is a key phase in a complex action such as this. Plaintiffs would need to depose Defendants' experts and make their own experts available to be deposed by Defendants. If Defendants were able to materially damage one of Plaintiffs' experts—or successfully move to have them excluded from trial—it could have drastic consequences for Plaintiffs' claims. *See, e.g.*, *In re Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 254 (S.D.N.Y. 2014), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016).

### 2.    Plaintiffs Faced The Risk of An Adverse Summary Judgment Ruling.

In addition, Defendants would almost certainly file a motion for summary judgment that, if successful, could substantially reduce any damages or eliminate them entirely. The elements of

---

a Rule 10b-5 claim are falsity, materiality, scienter, reliance, loss causation and damages. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Defendants' summary judgment motion would likely attack several of these elements, including falsity, materiality, scienter, and loss causation, and if Defendants prevailed as to any one of these elements, the Class would recover nothing. *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed to establish a triable issue on loss causation); *In re NeoPharm, Inc. Sec. Litig.*, 705 F. Supp. 2d 946, 966 (N.D. Ill. 2010) (granting partial summary judgment where plaintiffs failed to prove falsity or scienter). Scienter in particular is a difficult element to prove. *In re LJ Int'l, Inc. Sec. Litig.*, No. CV0706076GAFJWJX, 2009 WL 10669955, at \*3 (C.D. Cal. Oct. 19, 2009). Defendants also would have likely raised the argument that damages should be calculated using "split adjusted" prices – an argument that if successful would substantially reduce Plaintiffs' damages.

While Plaintiffs believe they could muster a strong opposition to a summary judgment motion, there is no guarantee they would prevail before the Court, which supports final approval of the Settlement.

### 3. Maintaining Class Action Status Through Trial Is Not Guaranteed.

While this Court certified the Class and an interlocutory appeal was denied, Defendants could, but for the Settlement, attempt to alter or amend the class certification order. Rule 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("there is no guarantee the [class] certification would survive through trial, as Defendants might have sought decertification or modification of the class"). A change in the law or facts might upset certification. "While this may not be a particularly weighty factor, on balance it somewhat favors approval of the proposed Settlement." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506-07

(W.D. Pa. 2003).

### 4.    Plaintiffs Faced The Myriad Risks Presented by Trial.

Plaintiffs might also lose at trial, or the jury might reduce damages significantly. *See* Puma Biotechnology – Both Sides Claim Victory in Rare Jury Trial Verdict (reporting that according to defendants, plaintiffs won only 5% of the damages they requested).[4] Plaintiffs might still lose their case even after winning at trial. *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (granting motion for judgment as a matter of law against plaintiffs after partial jury verdict in their favor).

Even if Plaintiffs survive summary judgment and motions to exclude their experts, win at trial, secure a verdict for damages, and then defend the verdict from Defendants' inevitable post-trial motions, Plaintiffs might still lose on appeal. *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (overturning $81 million jury verdict).

Accordingly, the likely duration and expense of further litigation also supports a finding that the Settlement is fair, reasonable, and adequate. *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results").

### B.    The Amount Obtained in Settlement Supports Final Approval.

The determination of a reasonable settlement is not susceptible to a mathematical equation yielding a particularized sum. Nor is the proposed Settlement "to be judged against a hypothetical

---

[4] *Available at* https://www.issgovernance.com/puma-biotechnology-both-sides-claim-victory-in-rare-jury-trial-verdict/

or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. As "[s]ettlement is the offspring of compromise[,] the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624. Common sense dictates that Plaintiffs must take less in a settlement than they would after a complete trial victory or Defendants would have no reason to settle. In a factually and legally complex securities class action lawsuit such as this, this is no guarantee that Plaintiffs could secure or enforce a judgment at or near the full amount of the class-wide damages they estimate. Indeed, the Ninth Circuit has found that a settlement may be acceptable even if it amounts to only a fraction of the potential recovery that might be available at trial. *Id.* at 628; *Mego*, 213 F.3d at 459.

Moreover, estimating aggregate damages can be challenging due to, among other things, assumptions that must be made regarding trading activity. The estimated damages would be reduced or eliminated entirely if the class certification order was amended or vacated, or if the Court or jury were to accept some or all of Defendants' defenses, including that a portion or all of the losses are attributable to causes other than the alleged misstatements or omissions, or that certain statements are not actionable. Even if Plaintiffs prevailed on loss causation at trial, a jury verdict could be reversed due to problems with loss causation. *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (reversing plaintiffs' jury verdict for failure to prove loss causation). In arriving at this Settlement, Plaintiffs carefully considered the significant risk that it would be unable to recover a greater amount further down the road.

The Settlement provides a substantial benefit for Class Members. The Settlement recovers roughly 6% of Plaintiffs' maximum estimated class-wide damages. This recovery is reasonable and compares favorably with typical recoveries in other securities class actions. *See Omnivision*, 559 F. Supp. 2d at 1042 (approving 9% recovery); *In re Regulus Therapeutics Inc. Sec. Litig.*, No. 3:17-CV-182-BTM-RBB, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving 1.99% recovery); *Heritage Bond*, 2005 WL 1594403, at *8-*9 (average recovery between 2% to 3% of maximum damages); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162–63 (S.D.N.Y. 2011) ("the average settlement in securities class actions ranges from 3% to 7% of the class's total estimated losses"). Notably, Defendants intended to argue at summary judgment and trial that damages should be calculated using split adjusted prices, which if successful would have substantially reduced damages. According to Cornerstone Research, approximately 27% of securities class actions settled for an amount between $10 million and $24 million in 2022, and approximately 43% settled for less than $10 million.[5] The median recovery in cases such as this one alleging Rule 10b-5 claims with damages between $250 million and $499 million was approximately 4.3% of estimated damages in 2022, and 4.1% between 2013 and 2021.[6] Thus, the Settlement is well above the median recovery for cases with a similar amount of alleged damages, indicating that the Settlement is a reasonable and adequate result.

## C.    The Extent of Discovery Completed and the Stage of the Proceedings Support Final Approval.

Courts also consider the stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case in determining the fairness,

---

[5] Laarni T. Bulan, *et al.*, Securities Class Action Settlements: 2022 Review and Analysis (Cornerstone Research), at 4, *available* at https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf.

[6] *Id.* at 6.

reasonableness, and adequacy of a settlement. *Mego*, 213 F.3d at 458. Importantly, "in the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Id.* at 459. Instead, "courts look for indications [that] the parties carefully investigated the claims before reaching a resolution." *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2016 WL 6248426, at *13 (N.D. Cal. Oct. 25, 2016) (internal quotations omitted).

Here, Plaintiffs went far beyond "carefully investigat[ing] the claims." *Id.* Before agreeing to the Settlement, Plaintiffs completed fact discovery—including reviewing 217,443 documents produced by Defendants, and deposing twelve fact witnesses—and conducted substantial expert discovery. Stern Decl. ¶12. "[T]he fact that the parties did not settle until after the conclusion of fact discovery indicates that Plaintiffs were well aware of the merits of their case and the difficulties awaiting them at trial." *Kmiec v. Powerwave Techs., Inc.*, No. SACV1200222CJCJPRX, 2016 WL 5938709, at *4 (C.D. Cal. July 11, 2016). Plaintiffs and Class Counsel acquired "fulsome understandings" of the parties' respective positions on the legal and factual issues in the case. *In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (investigation provided sufficient understanding of merits even though the PSLRA precluded discovery).

Plaintiffs and Class Counsel were extremely well-positioned to assess the strengths and weaknesses of their claims and of Defendants' defenses, and of the reasonableness of the Settlement, supporting final approval.

### D.    The Settlement is the Product of Arm's-Length Negotiations.

Courts presume that a proposed settlement is fair and reasonable when it results from

arm's-length negotiations. *See In re Portal Software, Inc. Sec. Litig.*, No. C 03 5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007); *Riker v. Gibbons*, No. 3:08-CV-00115-LRH, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining"). Here, Plaintiffs reached the Settlement after arm's-length negotiations that included two mediations, each facilitated by an experienced mediator: first by Michelle Yoshida of Phillips ADR; and later by Layne Phillips (Ret.), also of Phillips ADR. *Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Both Ms. Yoshida and Judge Phillips have substantial experience mediating complex, securities class actions. Prior to each mediation, the Parties exchanged mediation statements and replies which included, among other things, their respective views on the merits of the Action, damages, and available sources of funding for a potential settlement or judgment. The participation of not one but two experienced mediators in the Settlement underscores that it is the product of non-collusive, arm's-length negotiations. *See Todd v. STAAR Surgical Co.*, No. CV 14-5263 MWF (GJSx), 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) (that the parties reached a settlement as a result of mediation with Ms. Yoshida weighs in favor of approval); *Roberti v. OSI Sys., Inc.*, No. CV1309174MWFMRW, 2015 WL 8329916, at *3 (C.D. Cal. Dec. 8, 2015) (same with respect to Judge Phillips).

In addition to the non-collusive, vigorous settlement negotiations, counsel on both sides of this Action are experienced and knowledgeable when it comes to litigating complex, securities class actions. "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Heritage Bond*, 2005 WL 1594403, at *9

(in a complex class action, counsel is "most closely acquainted with the facts of the underlying litigation"). "Absent fraud, collusion, or the like," the Court should give "[g]reat weight [] to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation," *Heritage Bond*, 2005 WL 1594403, at \*9; *DIRECTV*, 221 F.R.D. at 528.

Rosen Law's experience and reputation allowed it to leverage the credible threat of further litigation and trial, but also to recognize that the Settlement was a better option for the Class. Courts in this District, as well as others, have recognized that Rosen Law "has the necessary skill and knowledge to effectively prosecute" securities class actions. *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at \*3 (C.D. Cal. Aug. 19, 2014); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"); *Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at \*19 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, No. 19-3823, 2020 WL 763277 (2d Cir. Jan. 2, 2020) (finding in approving the largest ever settlement in a case brought by investors in a Chinese company that "the quality of representation by both [Rosen] and Defendants' counsel was high in this case."). *See also* Ex. 1 to Rosen Fee Decl. Additional counsel, Pomerantz LLP, also has substantial experience litigating securities class actions on behalf of investors. Ex. 1 to Declaration of Jeremy Lieberman on Behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses. Thus, Plaintiffs' Counsel's experience supports approval. Likewise, Defense Counsel, Mayer Brown LLP and Perkins Coie LLP, are preeminent firms with skilled securities litigation practitioners, who vigorously represented their clients and were equally knowledgeable about the merits of the case.

Finally, Plaintiffs' support for the Settlement is further evidence that the Settlement is fair,

reasonable and adequate. *See* Stern Decl., Exs. 4-6 (Plaintiffs' declarations). Plaintiffs' support for a settlement should be accorded "special weight because [the plaintiff] may have a better understanding of the case than most members of the class." *DIRECTV*, 221 F.R.D. at 528 (quoting Manual for Complex Litigation (Third) § 30.44 (1995)). The protracted arms' length negotiations and the support of both experienced counsel and Plaintiffs favors final approval of the Settlement.

### E.    The Favorable Reaction of the Class Supports Approval.

The absence of objections to a proposed class action settlement supports approval. *Omnivision*, 559 F. Supp. 2d at 1043; *In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members").

As the Court directed in the Preliminary Approval Order, the Claims Administrator, *inter alia*, emailed links to the Long Notice and Proof of Claim, to Class Members for whom the Claims Administrator could obtain email addresses; mailed the Postcard Notice to Class Members who could be identified with reasonable effort but for whom no email address was obtainable; and gave notice to nominees and custodians who held Zillow securities during the Class Period as record owners but not as beneficial owners. Bravata Decl. ¶¶6-7.

To date, notice of the Settlement has been sent to 131,532 potential Class Members by mailed Postcard Notice or by emailed link to the Notice and Claim Form. Bravata Decl. ¶7. The Claims Administrator caused 91,190 copies of the Postcard Notice to be mailed to potential Class Members. Bravata Decl. ¶¶6, 8. A nominee also informed the Claims Administrator that they had emailed 40,342 customers to notify them of the Settlement, including links to the Notice and Claim Form on the settlement website. *Id.* ¶6. In addition, the Summary Notice was published electronically on *Globe Newswire* and in print once in *Investor's Business Daily* on May 8, 2023.

Bravata Decl. ¶9. The deadline to file objections is July 18, 2023. To date, no Class Members have objected to the Settlement. *Id.* ¶12; Stern Decl. ¶36. Plaintiffs will respond to any subsequent duly lodged objections, if any, in their reply.

The Court previously certified the Class on October 28, 2020. Dkt. No. 100. Only three valid requests for exclusion were submitted prior to the April 14, 2021 deadline. Dkt. No. 114, ¶8. Though the exclusion deadline passed prior to the Settlement, the miniscule opt-out rate indicates that Class Members were satisfied with the quality of representation provided by Plaintiffs and Class Counsel. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 0.56% of eligible class members requesting exclusion); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("overwhelming positive reaction of the class members" including 16 exclusion request representing 4.86% of class supports settlements' approval.); *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *14 (N.D. Cal. Feb. 11, 2016) (16 valid exclusion requests representing 0.176% of public shares, supported settlement approval); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-00302 MRP, 2013 WL 6577020, at *16 (C.D. Cal. Dec. 5, 2013) (69 exclusion requests in response to mailing of over 50,000 notices supports settlement). The absence of any objections and exclusion requests supports final approval.

### F.    The Settlement Meets the Remaining Rule 23(e)(2) Factors.

#### 1.    The Proposed Method for Distributing Relief Is Effective.

Rule 23 requires that the Court consider the effectiveness of the proposed method of distributing relief to the class, including the method of processing claims. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Preliminary Approval Order established a plan to provide notice to potential Class Members, which Plaintiffs and the Claims Administrator duly executed. *See* Bravata Decl. and Exhibits thereto.

Class Members are to complete a standard claim form that requests the information necessary to calculate claims pursuant to the Plan, *i.e.*, information concerning transactions in Zillow securities during the Class Period and the ninety days after the Class Period. The case-specific website also allows Class Members to file their claims electronically.

### 2.    The Proposed Award of Attorneys' Fees is Appropriate.

Rule 23 also addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in the Fee Brief, Class Counsel seek an award of attorneys' fees of one third of the Settlement Amount, plus interest, and expenses of $1,165,451.64. This fee request, fully disclosed in the Postcard Notice, Summary Notice, and Long Notice, is consistent with awards granted in similar actions in the Ninth Circuit. *See* Fee Brief, Section III(C)(5).

Plaintiffs also request $15,000 each pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), in connection with their representation of the Class. Plaintiffs supervised and engaged with Plaintiffs' Counsel during litigation and throughout settlement negotiations; searched for and collected documents to respond to Defendants' discovery requests, and extensively prepared for and sat for in-person depositions. Stern Decl., Exs. 3-5 (Plaintiffs' declarations). Each Plaintiff spent a very substantial amount of time representing the Class, and Plaintiffs' request for compensation is appropriate, as courts regularly grant similar awards to representative plaintiffs. *See* Fee Brief, Section V.

### 3.    The Parties Have No Other Agreements.

Rule 23 requires that any agreement made in connection with the proposed Settlement be disclosed. Fed. R. Civ. P. 23(e)(2)(C)(iv). The Stipulation is the only agreement between the Parties in connection with the proposed Settlement.

### 4.    There is No Preferential Treatment; the Proposed Plan of Allocation

**Treats Class Members Equitably.**

Rule 23 requires courts to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Plan determines how the money is distributed to Authorized Claimants. The Settlement Fund is distributed *pro rata* to each Class member who submits a valid claim based on their recognized losses resulting from the stock price declines during the Class Period, as alleged in the Complaint. Class Counsel developed the Plan in consultation with Plaintiffs' damages expert, and the Plan closely tracks the theory of the case. Stern Decl. ¶9. The Plan will determine Plaintiffs' recovery just like every other Class Member, so Plaintiffs receive no preferential treatment.

**G.      The Court Should Approve the Plan of Allocation**

In the Preliminary Approval Order, the Court preliminarily approved the Plan, which was detailed in the Notice. Plaintiffs now request that the Court grant final approval of the Plan for the purpose of administering the Settlement. Courts assess plans of allocation by the same metric as settlements as a whole: they must be "fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. Practically speaking, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

The proposed Plan has a reasonable, rational basis. It distributes the settlement proceeds on a *pro rata* basis, calculating a claimant's relative loss proximately caused by Defendants' alleged misrepresentations and omissions, based on factors such as when and at what prices the claimant purchased and sold Zillow securities. Plaintiffs engaged a damages consultant to assist in developing a plan to allocate the Settlement proceeds among Claimants with the goal of reimbursing Class Members in a fair and reasonable manner. Stern Decl. ¶9. *See Riker*, 2010 WL 4366012, at *5 ("Class counsel has consistently consulted with experts throughout this litigation,

and based on these consultations, has determined that the terms agreed upon in the settlement represent a fair, adequate, and reasonable settlement of plaintiffs' claims").

Because they tend to mirror the complaint's allegations in securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common." *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (finding plan of allocation was "even handed" where "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares"). Here, each authorized claimant will receive a *pro rata* share of the Net Settlement Fund based on the claimant's recognized loss as calculated in accordance with the Plan. Stern Decl. ¶10. There have been no objections to the Plan from any potential Class Members. Bravata Decl. ¶12; Stern Decl. ¶36. The Plan fairly compensates Class Members and should be approved.

## IV.    NOTICE TO THE CLASS SATISFIED DUE PROCESS.

Plaintiffs provided the Class with adequate notice of the Settlement, in the manner and form that the Court preliminarily approved. As described above (Section III.E., *supra*) and in the Bravata Declaration, 131,532 potential Class Members were notified either by mailed Postcard Notice or emailed a direct link to the Notice and Claim Form. The Court-approved Summary Notice was also published online in *GlobeNewswire* and in print in *Investor's Business Daily* on May 8, 2023. Bravata Decl., ¶9. The Claims Administrator also published all information regarding the Settlement online on the Settlement website. *Id.* ¶11. The notice plan executed here directed notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1)(B).

The Notice provides all necessary information for Class Members to make an informed decision regarding the proposed Settlement. It "generally describes the terms of the settlement in

sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009). The Notice gave Class Members all the information they needed to decide whether to object or file a claim. It told Class Members, among other things: (1) the amount of the Settlement; (2) why the parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of attorneys' fees and expenses that Class Counsel would seek; (5) Class Counsel's contact information; (6) that Class Members could object to the Settlement; and (7) the dates and deadlines for certain Settlement-related events. 15 U.S.C. § 78u-4(a)(7). The Notice further explained that the Net Settlement Fund would be distributed to eligible Class Members who submit valid and timely claim forms under the Plan as described in the Notice.

This action was previously certified as a class action on October 28, 2020. Dkt. No. 100. Following certification, Class members were given an opportunity to opt out of the Class and placed on notice that they may not receive a second opportunity to exclude themselves at the time of settlement. Dkt. No. 111. Pursuant to Ninth Circuit law, *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018), the Court approved a Notice that did not provide Class Members a second opportunity to exclude themselves from the Class. Dkt. No. 175. This is consistent with numerous other courts that have approved settlements in actions governed by the PSLRA that did not allow a second opportunity to opt out. *N. Sound Cap. LLC v. Merck & Co.*, 938 F.3d 482, 485 (3d Cir. 2019) (noting that "the District Court declined to provide class members with a second opportunity to opt out" at the time of the settlement); *In re Washington Mut., Inc.*, 2015 WL 12803633, at *1 (W.D. Wash. June 22, 2015) (holding that "the Court will exercise its discretion under Rule 23(e)(4) and will not provide Class Members with a second opportunity to exclude themselves from the Class in connection with this Settlement"); *Baker v. Seaworld Ent., Inc.*, 3:14-

cv-02129 (S.D. Cal.), ECF 518 at 8-9 (attached as Exhibit 1 to Dkt. No. 174); *Davis v. Yelp, Inc.*, 3:18-cv-00400 (N.D. Cal.), ECF No. 201 at 12 (attached as Exhibit 2 to Dkt. No. 174).

In sum, the Notice fairly apprised Class Members of their rights, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process. *See, e.g.*, *Baker v. SeaWorld Ent., Inc.*, No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2–*3 (S.D. Cal. Feb. 19, 2020); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *1 (N.D. Cal. Nov. 26, 2007) (approving similar notice program).

## V.    CONCLUSION

For the foregoing reasons, the Court should enter the proposed Final Approval Order, which will: (a) find that the notice plan complied with all applicable requirements; and (c) approve the Settlement and Plan as fair, reasonable, and adequate.

1    Dated: July 11, 2023.

2                                              Praesidio Consumer Law PLLC

3                                              By: /s/ Danny Kelly-Stallings
4                                              Danny Kelly-Stallings, WSBA No. 44445
                                               dstall@gmail.com
5                                              1916 Pike Pl., Suite 12
                                               Seattle, WA 98101
6                                              (206) 353-6197

7                                              *Local Counsel for Plaintiffs and the Class*

8                                              THE ROSEN LAW FIRM, P.A.

9
                                               Laurence M. Rosen, Esq. (*pro hac vice*)
10                                             Email: lrosen@rosenlegal.com
                                               Jonathan Stern, Esq. (*pro hac vice*)
11                                             Email: jstern@rosenlegal.com
                                               275 Madison Avenue, 34th Floor
12                                             New York, NY 10016
                                               Telephone: (212) 686-1060
13                                             Facsimile: (212) 202-3827

14
                                               *Lead Counsel for Plaintiffs and the Class*
15

16

17

18

19

20

21

22

23

24

25

26